WILKINSON, Chief Judge,
dissenting:
Trina Yates brought a wrongful death action after a Gantry crane manufactured by Motivation Industrial Equipment Limited collapsed on her husband and killed him. The question is whether a foreign corporation that purposefully avails itself of an American forum can be required to defend there. In my view, the majority’s answer is mistaken.
My good colleagues find no purposeful availment.* However, at the time of the accident, Motivation had: (1) initiated a company policy to sell its products in the United States; (2) represented to American citizens that it had an address here; (3) hired a sales representative to oversee sales and service in a number of states, including North Carolina; (4) purchased liability insurance to protect itself in the event of an accident in the United States, including North Carolina; (5) and advertised its products in nationally distributed trade journals and magazines.
It is not sufficient to analyze these facts piecemeal. And taken together, there is no doubt that Motivation has purposefully availed itself of the benefits and protections of North Carolina law. The majority is correct to note that merely placing a product in the stream of interstate commerce will not support the exercise of personal jurisdiction. See Fed. Ins. Co. v. Lake Shore Inc., 886 F.2d 654, 658 (4th Cir.1989). Here, however, we have more. See id. at 659 (distinguishing “cases where a manufacturer employs an intermediary or distributor in the forum state”). Indeed, I am not aware of any case in which a court found no personal jurisdiction where a foreign company continuously rehired a sales representative for the forum *181 state, all as part of a strategy of targeting this country and that state for increased sales.
The specifics of the Sales Agent Contract entered into by Motivation and its North Carolina sales agent are worthy of consideration. On March 21, 1994, the parties entered into an agreement, renewable each year, in which the company “appoint[ed] [Shannon] as its exclusive and sole agent for the sale of [Motivation’s] manufactured products in the territory ... set out herein.” Motivation assigned Shannon the area of the United States encompassing Tennessee, North Carolina, South Carolina, Alabama, Georgia, and Florida. In April 1995, Florida was removed from Shannon’s sales area and Mississippi was added. This territorial change is reflected in a hand-written amendment to the contract. But North Carolina has remained a part of Shannon’s assigned territory since the contract was first formed. Indeed, Shannon continues to represent Motivation in North Carolina to this day.
The majority makes much of how little Shannon accomplished on behalf of Motivation in North Carolina. But whether or not Shannon was an effective sales representative is of no consequence. Motivation asserts that it has enjoyed limited success in obtaining business in the United States in general and North Carolina in particular. However, it is clear that the company did purposefully direct its sales efforts to that end.
As a consequence, the exercise of federal jurisdiction in North Carolina would not violate Motivation’s “liberty interest in not being subject to the binding judgments of a forum with which [it] has established no meaningful ‘contacts, ties, or relations.’ ” Burger King Corp. v. Rudzewicz, 471 U.S. 462, 471-72, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) (quoting Int'l Shoe Co. v. Washington, 326 U.S. 310, 319, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Similarly, the exercise of jurisdiction would not interfere with the company’s ability “to structure [its] primary conduct with some minimum assurance as to where that conduct will and will not render [it] hable to suit.” World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980).
Having found that the first two prongs of the specific jurisdiction inquiry are satisfied, I proceed to consider the final element of the test. This prong concerns the reasonableness of exercising jurisdiction— that is, whether the exercise of jurisdiction would offend “‘traditional notions of fair play and substantial justice.’ ” Int'l Shoe, 326 U.S. at 316 (quoting Milliken v. Myer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)). Though the majority finds it unnecessary to reach this issue in view of its decision on the first two prongs, the majority nevertheless chooses to consider the second element of the test despite its dispositive handling of the first. Indeed, the majority’s silence on the question of reasonableness is instructive because it is this component of the inquiry that most dramatically reveals the injustice of preventing Yates from bringing suit in North Carolina.
The reasonableness inquiry requires a court to consider several factors, including “the burden on the defendant, the interests of the forum State, and the plaintiffs interest in obtaining relief’ in the forum. A court “must also weigh in its determination ‘the interstate judicial system’s interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies.’ ” Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113, 107 S.Ct. 1026, 94 L.Ed.2d 92 *182 (1987) (quoting World Wide Volkswagen, 444 U.S. at 292); see also Lesnick v. Hollingsworth & Vose Co., 35 F.3d 939, 945-46 (4th Cir.1994). As the district court held, these considerations compel the conclusion that the exercise of jurisdiction in this case comports with due process.
To begin with, though the burden on Motivation of defending itself in a foreign forum is not trivial, see Asahi, 480 U.S. at 114, that burden is far from unfair in view of Motivation’s decision to do business in North Carolina. Indeed, it may be cost effective for the company to conduct discovery and try the case in North Carolina because the accident site, the witnesses, and the crane itself are all located there.
In addition, the interests of both Yates and North Carolina in the exercise of jurisdiction over Motivation are compelling. The accident took place in North Carolina, and the company’s alleged negligence caused the death of a North Carolina citizen. Further, the decedent left behind three children and a spouse who is also a North Carolina citizen. There can be no doubt that the state has a strong interest in rectifying wrongs allegedly committed within its territory against its citizens. And the state has an equally strong interest in protecting its consumers by requiring foreign manufacturers to comply with its safety standards, and by ensuring “the recovery by one of its citizens of appropriate compensation, if there is a substantive cause of action.” Lee v. Walworth Valve Co., 482 F.2d 297, 299-300 (4th Cir.1973).
Finally, in view of Motivation’s claim that it is not subject to suit in any state, Yates may not be able to sue the company in any jurisdiction in the United States. It is not right to let Motivation do business in this country while at the same time relieving it of the obligation to defend here when the death of an American citizen is allegedly caused by one of its products. And it is just as unfair to require this North Carolina widow to go to Canada to find out if her husband’s life was negligently taken.
I respectfully dissent.

 The district court explicitly found that Motivation had "concede[d]" the issue of whether Yates’ claim arose out of or was related to the company’s activities in the forum state. Notwithstanding the concession, the majority determines that the arising-out-of prong of the specific-jurisdiction test has not been met. But such concessions by litigants are binding in general, and the requirement of personal jurisdiction can be waived. Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703, 102 S.Ct. 2099, 72 L.Ed.2d 492 (1982). Motivation is therefore bound by this concession. It never appealed the district court’s finding of a concession, and it never even filed a reply brief before this court to contest Yates’ contention that it had made the concession. What we have here, therefore, is a double problem from Motivation’s standpoint—namely, a concession followed by a waiver.
The majority goes to great lengths to excuse Motivation’s litigation conduct. It asserts that the district court erred in attributing this concession to Motivation, remarking that the court below either misread Motivation's brief or accepted the company’s misapplication of the law. The majority further states that we are not bound by this misreading or misapplication. Ante at-n. 5. But there was no misreading in view of the majority's own concession that Motivation misunderstood the governing law. And there is no doubt that the company is bound by its legal error because we are dealing with a waivable form of jurisdiction. Even if the majority is correct that Motivation did not concede that Yates’ claim arose out of or was related to Motivation's activities in North Carolina, the company certainly conceded the issue of whether the plaintiff's claim had so arisen when it stated that "the prima facie burden the Plaintiff needs to establish is that the Defendant purposely directed its activities toward the forum state.” Defendant’s Supp. Brief in Support of Motion to Dismiss at 6. It is on this primary issue that I primarily take exception with the majority's view.